**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

JOSEPH NICHOLS,
Plaintiff,
v.
ACTIVISION PUBLISHING, INC.,
Defendant.

**Civil Action No. _______________**

# PETITION/COMPLAINT TO VACATE ARBITRATION AWARD
# (9 U.S.C. § 10)

I am Joseph Nichols. I represented myself in a JAMS arbitration against Activision Publishing, Inc. (JAMS Reference No. 5400001213). The arbitrator ruled against me on August 5, 2026, and left a permanent ban on my Call of Duty account in place. I am asking this Court to vacate that award under 9 U.S.C. § 10.

## What happened

Activision permanently banned my account for what they called boosting. This happened while I was playing Call of Duty: Black Ops 6. The ban is franchise-wide. It covers every Call of Duty title from Modern Warfare II (2022) through current and future games. I had pre-ordered the Black Ops 7 Vault Edition for $100. The ban was applied before Black Ops 7 released, so I was never able to play it. A new Modern Warfare 4 was also later added to the ban list. I was in Call of Duty: Warzone's Plunder mode while working a night shift. Squad Fill was turned off, which is a feature the game provides that lets you play solo without teammates. I did not have any teammates. Over a few days I got roughly 50 Battle Pass tokens and about 4–6 player levels. Everything I got was cosmetic. I did not play ranked, did not gain competitive ranking, and did not get any real advantage over other players.

Activision's Security and Enforcement Policy, which was in effect at the time, says for boosting: a first offense may result in a temporary suspension and a reset of stats, emblems, weapon customizations, and leaderboard entries. Extreme or repeat offenses may result in a permanent suspension. The policy defines an "extreme offense" as one in which a player has caused detriment to other players or organized large groups to commit additional offenses. This was my first offense. Activision skipped the first-offense option and went straight to a permanent ban.

## What happened in the arbitration

At the May 29, 2026 conference, Activision's attorney argued that the Security and Enforcement Policy was only a "guide" and was not part of the contract. I pointed out that the Terms of Use incorporate it. The arbitrator considered that position and later found in the Final Award that the Terms of Use and the Security and Enforcement Policy together form an enforceable contract. She also noted that the policy uses "may," not "shall," so it does not guarantee the lightest penalty.

At the August 5, 2026 hearing, Activision submitted a declaration from T.L., its Senior Manager of Security Operations. That declaration assumed that a temporary ban would not stop me, based on Activision's general experience with other players who boost at "this scale and frequency." There was no evidence about me specifically. Activision also argued that my activity caused detriment to other players. They started

by talking about teammates. Because I had no teammates (Squad Fill was off), the argument then shifted to everyone else in the lobby, including enemy players. They never produced any in-game reports, complaints from other players, or other proof that any specific person was harmed.

During the hearing the arbitrator asked Activision's attorney what would count as a first offense that gets a temporary suspension versus something extreme. The attorney did not give a specific definition. She said the extreme descriptor exists for cases that show a disposition to continue, and that Activision decides what is extreme. There was no written finding or clear standard that said my conduct met a defined line.

The arbitrator asked how Activision makes money. Both sides explained that the company makes money from game purchases, in-game bundles, and the battle pass. The arbitrator then suggested that an AFK player could make the game less competitive and less fun for others, which could reduce their spending. That was an assumption raised by the arbitrator. Activision did not present evidence that sales or player spending actually dropped because of my activity or AFK players in general.

In the Final Award the arbitrator credited Activision's conclusion that my conduct was extreme and detrimental, and that a lesser sanction was unlikely to work. She said Activision was not required to try a temporary ban or a stat reset first. She dismissed my claim.

**Why the award should be thrown out**

Under 9 U.S.C. § 10 the Court can vacate an award if the arbitrator exceeded her powers or if the way the hearing was handled prejudiced my rights. That is what happened here:

- The arbitrator treated Activision's own decision that my conduct was "extreme" as enough, even though Activision never defined "extreme" with any specific standard and never proved actual detriment to any other player. The policy requires detriment to other players for something to be extreme. Because I had no teammates (Squad Fill was off), Activision shifted from teammates to other players in the lobby without any reports, complaints, or other evidence.
- The award rests on assumptions that were never proven: that a temporary ban would not have stopped me, that my solo activity hurt other players, and that it reduced other people's spending on the game. The security manager's declaration assumed the temporary ban would not work based on general experience, not evidence about me. A stat reset would have reversed the cosmetic progression I gained. Activision could have done that under its own policy.
- Earlier in the case the arbitrator questioned what the point of a first-offense policy would be if it could simply be ignored and a permanent ban imposed anyway. The Final Award did not reconcile that concern with the result. It effectively made the first-offense language in the policy meaningless.

I am not asking the Court to re-play the game or re-weigh every fact. I am asking it to vacate an award that went beyond the powers given by the contract and the company's published policy, and that rested on unproven assumptions instead of evidence.

**What I want**

I ask the Court to vacate the Final Award dated August 5, 2026, and order Activision to restore my account so I can play Call of Duty again.

Dated: October 14, 2026

/s/ Joseph Nichols

Joseph Nichols

229 Dorsey Road, Fort Fairfield, Maine 04742

207-554-6310

jcnichols2005@gmail.com

Pro Se